## SCHANEWERK v. HOBERECHT, *Plaintiff in Error.*

### In Banc June 19, 1893.

1. **Deed of Trust:** PLACE OF SALE: REDEMPTION. The power of sale contained in a deed of trust given to secure a debt must be strictly pursued and a sale at a place other than that prescribed in the deed of trust will not deprive the grantor of his right of redemption. (*Stewart v. Brown*, 112 Mo. 171 followed.)

2. ———: ———: COURTHOUSE DOOR. The sale in this case, *held* not to have been made "at the court house door," as contemplated by the deed of trust.

3. ———: POWER COUPLED WITH AN INTEREST. A power of sale contained in a deed of trust, which has conveyed the legal estate in the land to the trustee to secure a debt due a creditor, is not a mere naked authority but a power coupled with an interest and is irrevocable by the grantor.

4. ———: CONVEYANCE BY TRUSTEE: VENDEE'S TITLE. Where a trustee conveys the property even though in breach of his trust, his power is extinguished and the title becomes absolute in his vendee in a court of law.

5. ———: EJECTMENT: OUTSTANDING TITLE. Where a sale, under the power contained in the deed of trust, is not made at the place prescribed therein it will still pass the legal title, and a deed under such sale will be a good defense, as an outstanding title, under a general denial in ejectment brought by a purchaser at a subsequent foreclosure sale under the same deed of trust against the grantor therein.

*Error to Benton Circuit Court.*—HON. D. A. DEARMOND, Judge.

REVERSED AND REMANDED.

*E. J. Smith* for plaintiff in error.

(1) The trustee, Keiffer, having made one sale and a deed good on its face to Frank Schanewerk, and said Frank Schanewerk having paid $500 for the same, had not the powers of the trustee or the sheriff acting in his

place, ceased and was it not error to refuse the sixth declaration of law? Perry on Trusts [2d Ed], sec. 498 and cases; Lewin on Trusts, page 605, and cases; *Wood v. White*, 2 Keen 664; *Ohnsorg v. Turner*, 13 Mo. App. 533 and 87 Mo. 127; *Jones v. Mack*, 53 Mo. 147; *Kane v. McCown*, 55 Mo. 181; *Wilcoxen v. Osborn*, 77 Mo. 621. (2) Does not the record show an outstanding legal title in Frank Schanewerk, either by the first or second deed to him, and did not the court err in ruling otherwise in excluding the second and in refusing the declarations of law. And herein, if there is anything wrong with that title, is it not such that none but Hoberecht, the mortgagor can take advantage of, and he only in case he comes in to redeem? Or can plaintiff who is a mere volunteer and purchaser at a subsequent sale, take advantage of it in this action? *Allen v. Ranson*, 44 Mo. 263; *Reddick v. Grissman*, 49 Mo. 389. Plaintiff will rely on *Barnard v. Duncan*, 38 Mo. 170; and *Judge v. Booge*, 47 Mo. 544; and *Dover v. Kenerly*, 38 Mo. 469. (3) Was not said church the proper place to make sale under said deed of trust, and was it not error to refuse the third declaration? The last sale it will be remembered, was made at both places and Frank Schanewerk bid it off both times for the same sum. *Harrison v. Cachelin*, 35 Mo. 79; *Ohnsorg v. Turner*, 13 Mo. App. 533 and 87 Mo. 127; *Mitchell v. Nodaway Co.*, 80 Mo. 257; *Munson v. Ensor*, 94 Mo. 504; *DeJarnett v. DeGiverville*, 56 Mo. 440; *Stephenson v. January*, 49 Mo. 465.

*J. H. Lay* and *P. D. Hastain* for defendant in error.

BRACE, J.—This is an action in ejectment for two lots in the town of Cole Camp, Benton county. The petition is in common form, and the answer is a general

denial.   Trial before the court without a jury and judgment for the plaintiff.   The defendant brings the case here by writ of error.

The plaintiff to show title, *first,* read in evidence a deed of trust duly executed by the defendant, bearing date the twenty-fourth of April, 1883, conveying the premises to Garret Keiffer in trust to secure the payment of three promissory notes of the same date, executed by defendant to Henry Mahnkin and Claus Mahnkin, each for the sum of $933.35, payable one, two and three years after date; and in default of payment, the said trustee, " or in the event of his sickness, death or absence from the county of Benton or other disability or refusal to act," the sheriff of said county, "upon request of the holder," was therein authorized to sell the premises "at public vendue for cash *at the court house door* in the county of Benton, first giving twenty days' notice, etc.; *next,* a deed from John W. Payton, sheriff of Benton county, acting under said deed of trust on account of the refusal of the trustee therein named to act, dated January 30, 1888, conveying the premises to plaintiff in pursuance of a sale that day made by him thereof in compliance with the power conferred in said deed of trust.

To defeat the plaintiff's recovery upon this title, by showing an out-standing title in another, the defendant read in evidence a deed from said trustee, dated June 23, 1885, executed in pursuance of a sale made that day by him to one Frank Schanewerk in compliance with the terms of said deed of trust and recorded August 31, 1885; and offered to read in evidence a deed recorded the same day from V. Newell, sheriff of said county, dated July 24, 1885, conveying the premises to the said Frank Schanewerk, executed in pursuance of a sale made by said sheriff on that day, duly advertised by the trustee in accordance with the requirements of said

deed of trust, but which sale the said trustee refused to make. This deed was excluded by the court on the objection of the plaintiff, for the reason that it showed that the land was advertised by the trustee and the sale made by the sheriff.

The plaintiff in rebuttal introduced parol evidence tending to prove that for many years there stood in the court house square in the town of Warsaw, a court-house erected by said county, in which all its courts were regularly held; also a small house of one room, some fifty to seventy-five feet from the court house, used as a county clerk's office. That for several years prior to the sale by Keiffer, the trustee, to Frank Schanewerk in 1885, "said court house had been abandoned and torn down, not even the foundation remaining." That after the abandonment of said court house, the county court held its sessions in said county clerk's office, and the circuit court held its sessions in a building known as the Christian church, situate "across one block and two streets from said court house square" in said town. This was the situation when the sales were made to Frank Schanewerk, except that it was also shown that at that time there was another small one-room building in the square used as a circuit clerk and recorder's office.

The property was first offered for sale in front of the county clerk's office between one and two o'clock p. m., there being present about fifteen persons; and "bid off" by one P. D. Hastain, who refused to pay for it. About two or three hours afterwards, and when there was present only about one-third of the number as at the first offer, the property was again offered for sale at the same place and knocked off to the said Frank Schanewerk upon his bid of $500. Thereupon the trustee announced that he would sell said property also at the church and he and all the crowd except Hastain

repaired to the church, and the property was again offered for sale at the door of said church and bid off by Frank Schanewerk for $500.  And in pursuance of these proceedings the deed of June 23, 1885, was made to him.  At the time the sales were being made, no court of any kind was being held in the county clerk's office or in said church building.

It was also shown that Newell who, as sheriff and trustee made the second deed offered in evidence but rejected by the court, sold the property both in front of the county clerk's office and at said church, and that it was bid off at both places by Frank Schanewerk at $500.

The power of sale given in the deed of trust was restricted to a sale "at the court house door in the county of Benton," the time of which sale had been previously advertised for twenty days.  This power is the creature of contract, and not of law, and must be strictly followed, in order to render its exercise legitimate.  The evidence shows that at the time the sale was made the old court house had been torn down and not a vestige of it remained, and that the new one afterwards erected upon the same site had not yet been built.  But it does not show what the situation was when the deed of trust was made.  So that, conceding that we might resort to the circumstances attending the transaction for assistance in ascertaining the intention of the grantor, we have nothing to go to in this case except the deed.  The letter of the deed is that the sale must be made at the court house door, *i. e.*, that one sale of the property shall be made, at one door, of one particular court house; not that several sales shall be made at different times, at the door of several court houses, as was attempted in this case.

The old county clerk's office in the public square in which the county court held its sessions, might for

some of the purposes of *that court*, be called a court house, and the church temporarily provided for the circuit court to hold its session in, might (at least when *that court* was in session) be held to be the court house for judicial proceedings in *that court. Kane v. McCown*, 55 Mo. 181; *Bouldin v. Ewart*, 63 Mo. 331. But it must be remembered that we are here dealing with a power created in a private contract, by a person using language in its usual and ordinary signification, and when he says "court house in Benton county," nothing else appearing, he means the house provided by the county for the purpose, and in which are held the sessions of the various courts of the county *(Hambright v. Brockman*, 59 Mo. 52), and in which are generally the offices of the county officials. For that is the meaning usually and ordinarily given to the term "court house in a county of Missouri."

The evidence in this case discloses that not one of the sales of the property made, prior to the one under which the plaintiff claims, was made at the door of the court house in Benton county as thus defined, unless a part can be made equal to the whole. In the recent case of *Stewart v. Brown*, 112 Mo. 171, in which four opinions were delivered in court in *banc*, the questions briefly discussed in this paragraph were very deliberately considered and the previous decisions reviewed, and we are all agreed that none of the sales to Frank Schanewerk in this case can be upheld under that or any of the previous decisions of this court.

It may be conceded then that if this were an action of ejectment by Frank Schanewerk, the first purchaser, against the defendant, the grantor in the deed of trust in possession, in which he had set up the facts proven herein by parol evidence to defeat a recovery on the ground that his equity of redemption had not been foreclosed with an offer to redeem, the defense would

have been a good one under the decisions of this court, for the reason, that the *prima facie* case made by the trustee's deed would have been overcome by showing that the sales to Frank Schanewerk were not made at the place contemplated by said deed of trust.

But that is not this case. Here the defendant, the mortgagor in possession, makes no complaint of the sale under the power given by him. On the contrary he asserts the validity of that sale by setting up the out-standing title acquired under it against the plaintiff's title acquired by a subsequent sale and deed under the same deed of trust. And the only question in the case is, which one of the two, Frank Schanewerk or William Schanewerk, has the legal title to the premises? With the equities of any person against that legal title we have nothing to do. For the purposes of this case the defendant stands in the shoes of Frank Schanewerk, claiming under his legal title nothing more and nothing less, and the plaintiff claims the legal title under his subsequent trustees' deed, and nothing else. The deeds of each from the trustee are properly executed, show in each case on their face an execution of the power granted in strict compliance with the terms of the deed of trust, and that of Frank Schanewerk, being first in point of time, had the effect of transferring to him the legal title as between these two deeds. Whatever equities that title may be subject to in his hands, the plaintiff sets up none in his pleadings, and shows none by his evidence *superior* to those of Frank Schanewerk, for they each bought in market overt at a sale at which the rule *caveat emptor* obtains, and the plaintiff with the record of Frank Schanewerk's prior deed staring him in the face.

The whole force of the plaintiff's parol evidence in rebuttal was to show an equitable defense of the *defendant* against the outstanding title upon which the

*defendant* relied to defeat plaintiff's claim of legal title. It goes without saying that this defense belonged to the defendant, and not to the trustee who sold, the *cestui que trust* at whose instance he sold, nor to the plaintiff, who at the subsequent sale purchased from the trustee with record notice of such sale and the conveyance of the legal title in pursuance thereof. Whatever equities there are in the case growing out of the facts shown in evidence are the equities of the defendant against the legal title of Frank Shanewerk, upon which title the *defendant* stands, and not of the plaintiff, with which, however, as before said, we have nothing to do, the only question being: Did Frank Schanewerk, by his deed get the legal title of the defendant, grantor in the deed of trust? If he did, then the plaintiff got none by his subsequent deed, and the finding and judgment should have been for the defendant. A power of sale in a deed of trust in which the legal estate has been conveyed to the trustee to secure a debt due a creditor, is not a mere naked authority, but a power coupled with an interest and is irrevocable by the grantor. 2 American Law Register, N. S. 654; 2 Perry on Trusts [4 Ed.], sec. 602*h*; 2 Jones on Mortgages [4 Ed.], sec. 1792.

"The mortgagee in a deed of mortgage and the trustee in a deed of trust take the *legal* title and estate for the purposes of their security. In all cases the legal title is in the trustee under the trust deed, if the deed purports to convey the estate." 2 Perry on Trusts, sec 602*i*. "The legal estate being thus in the mortgagee or trustee for the purpose of the security, the power of sale is a power appendant to the estate itself and takes effect out of it. If the mortgagee or trustee ceases in any way to have an interest in the estate he ceases to have any power over it. If, therefore, they totally alienate the estate to which the power

is appendant, they extinguish the power. If a trustee conveys the property even in breach of the trust, he extinguishes his power and a subsequent sale will be void. But a court of equity can give relief from fraud and breaches of trust." *Ibid*, sec. 602*k*. "In a conveyance to a trustee or mortgagee the title as between the grantor or mortgagor and the trustee passes to the trustee or mortgagee. A trustee who has the fee in himself may convey it even if the conveyance is a breach of the trust and his grantee takes a title upon which he can maintain actions at law. And so it is said that although a trustee may convey the legal title in breach of the trust, and without complying with the power, yet the grantee will take a title good at law." *Ibid*, sec. 602*aa*. "This rule is founded upon a general principle and prevails in all the states * * * except in New York which converts the title of a trustee into a power by forbidding and making void all sales in breach of the trust." *Ibid*, sec 602*aa*, note 1. The general principle being that "the legal estate in the hands of a trustee has at common law precisely the same properties, characteristics, and incidents, as if the trustee were the absolute beneficial owner." 1 Perry on Trusts, sec. 321.

This principle has been recognized in this state. *Gale v. Mensiny*, 20 Mo. 461; *Railroad v. Green*, 68 Mo. 169; *Bowlin v. Furman*, 28 Mo. 427. In the last case, SCOTT, J., said: "It cannot be questioned that the deed of a trustee conveys a legal title. The trustee having a legal, though defeasible, title, that title becomes absolute in his vendee in a court of law. In a court of law the vendee need not show that the conditions of the trust deed have been complied with. * * * Although there is now no distinction between courts of law and equity, yet if a party under the present system will file a petition which formerly only

entitled him to a legal remedy, he cannot now under such a petition have any other than the remedy he formerly had. If he would have equitable relief he must set out in his pleading the facts which give him title to it." And BLISS, J., in *Johnson v. Houston*, 47 Mo. 227, says: "The plaintiffs have no equity but rely solely upon the legal title of Mrs. Johnson. That she once held the title is clear. But in a mortgage, or a deed of trust in the nature of a mortgage, the legal title after condition broken passes to the mortgagee or trustee. Such is the general law though modified in New York by the statute forbidding ejectment by the mortgagee, and such is the law of Missouri. *Walcop v. McKinney's Heirs*, 10 Mo. 229; *Meyer v. Campbell*, 12 Mo. 603; *Sutton v. Mason*, 38 Mo. 120; *Hubble v. Vaughan*, 42 Mo. 138. These cases arose under common mortgages, but a deed of trust is also an absolute conveyance upon its face, with the same condition of avoidance if the debt is paid; and the addition of a power to sell without judicial proceedings to foreclose certainly cannot avoid the legal effect of the grant."

The principles announced in these authorities have never been directly questioned. Applied to the case in hand, it must be held that the trustee's deed of Keiffer, of August 31, 1885, to Frank Schanewerk vested in him the legal title to the premises in question, although in a court of equity in a proper proceeding, the sale, upon the facts shown by the parol evidence of the plaintiff, might be held to be void, and the deed so declared, or treated, as to a party having a right to invoke the powers of that court for his protection against such sale and deed. The only doubt as to the correctness of such a conclusion arises from the fact that in some cases of that character, in the opinions rendered, it is too broadly stated or assumed in one form or another, "that where a power in a deed of trust

has not been executed in accordance with essential conditions, the sale, *and deed* will be held to be *utterly void* both *at law*, and in equity." As for example, *Thornburg v. Jones*, 36 Mo. 514; *Powers v. Kueckhoff*, 41 Mo. 426; *Eitelgeorge v. Building Ass'n*, 69 Mo. 52; *Goff v. Roberts*, 72 Mo. 570; *Long v. Long*, 79 Mo. 644; *Siemers v. Schrader*, 88 Mo. 20; *Ohnsorg v. Turner*, 13 Mo. App. 533; s. c., 87 Mo. 127.

In the last case, one of the grounds upon which an injunction was refused restraining a second sale by the trustee under a deed of trust, where it appeared upon the face of the trustee's deed that the first sale made thereunder was not made in conformity with the requirements of the trust deed, was, that the trustee's deed was an absolute nullity and cast no cloud upon the title. While the case in hand is distinguishable from the *Ohnsorg case*, in that the trustee's deed here under the first sale shows a sale in strict compliance with the requirements of the deed of trust; yet if the conclusion we have reached is correct, *the first deed* in that case did cast a cloud upon the title, although the sale was void, and its existence furnished ground for the interposition of chancery power.

In *Goff v. Roberts*, 72 Mo. 570, it was ruled, that in an action of ejectment, under a general denial it might be shown that the sale under a deed of trust was made at a place other than that designated in the deed in order to defeat a recovery. If the conclusion we have here reached is correct, that ruling was also incorrect.

As to the *dicta* in the other cases, it is only necessary to say that the authority cited for them, in the main, is the early case of *Stine v. Wilkson*, 10 Mo. 75, which does not warrant them, the point ruled there being (as stated in the syllabus) that "Chancery has jurisdiction

to control the acts of a trustee, under a deed to secure the payment of money; and where the powers conferred on the trustees are not strictly pursued, will set aside his sales."

It follows from what has been said that the judgment ought to be reversed, and the cause remanded, and it is accordingly so ordered. All concur except BARCLAY J., not voting.